440 So.2d 716 (1983)
STATE of Louisiana
v.
Don JORDAN.
Nos. 83-KD-1392, 83-KD-1393.
Supreme Court of Louisiana.
October 17, 1983.
Rehearing Denied December 9, 1983.
*717 Dwight Doskey, John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for Don Jordan.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, William R. Campbell, Jr., Asst. Dist. Attys., for the State.
BAILES, Justice Pro Tem.[*]
The defendant was convicted of first degree murder for which the jury recommended the death sentence on its finding the aggravating circumstance in La.Code Crim.P. art. 905.4(a), i.e., that defendant committed the murder while engaged in the perpetration or attempted perpetration of an armed robbery or aggravated burglary. On appeal, this court affirmed the defendant's conviction, however, the death penalty was set aside on the ground that an arbitrary factor had been injected into the *718 jury's deliberations during the sentencing hearing. See State v. Jordan, 420 So.2d 420 (La.1982).
As provided by La.Code Crim.P. art. 905.1, this court remanded to the district court for the empaneling of a new jury to determine the penalty.
By motion filed in limine, the defendant sought a ruling of the trial court prohibiting the state from using defendant's prior record of criminal convictions against him as evidence of an aggravating circumstance in the sentencing hearing. In support thereof, the defendant urged the trial court that La.Code Crim.P. art. 905.4(c) had been amended subsequent to the commission of the offense for which the defendant had been convicted to add an aggravating circumstance: "(c) the offender ... has a significant prior history of criminal activity." Additionally, the defendant had not been Boykinized by the courts which accepted the pleas that led to his convictions that constituted his prior criminal record.
The trial court ruled that the state could not argue the past criminal convictions of defendant as an aggravating circumstance. Additionally, the court ruled the state could anticipatorily introduce evidence of defendant's prior convictions. To this latter ruling, the defendant objected and sought writs in No. 83-KD-1392; the state objected to the first ruling and sought writs in No. 83-KD-1393. We granted both writs and both issues are before us at this time.
The 1979 amendment to art. 905.4(c) amended subparagraph (c) to read
(c) the offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping or has a significant prior history of criminal activity; (The underscored portion is the amendment added in 1979.)
Before this amendment, the prior criminal record of the defendant unless specifically provided for did not constitute an aggravating circumstance. In other words, the amendment added to and enhanced the enumerated aggravating circumstances which prevailed at the time of the commission of the crime on April 8, 1979.
We find the amendment of La.Code Crim.P. art. 905.4(c), which provides an additional factor, is a substantive change in the law. Arguendo, let us assume that at the time this murder was committed, none of the then existing aggravating circumstances was applicable to this defendant, and consequently no ground existed for a jury to consider the death penalty. However, subsequent to the commission of this crime but before the conviction of this defendant, the legislature did add another factor, namely, "the offender ... has a significant prior history of criminal activity," which is provable as to this defendant and which the jury may find beyond a reasonable doubt to exist. By the addition of this aggravating factor, this defendant is now exposed to the death penalty whereas, factually, prior to the commission of this murder, he was not so exposed. This change is ex post facto.
To apply this enhancing amendment to the aggravating circumstances to the sentencing procedure of this defendant for this crime is an ex post facto application of the law. Such is proscribed by the constitution. See State v. English, 367 So.2d 815 (La. 1979) and State v. Collins, 370 So.2d 533 (La.1979).
Now, addressing the trial court's ruling that the state could anticipatorily introduce evidence of defendant's prior convictions obviously for the purpose of demonstrating the character and propensities of the offender, we consider the ruling correct.
La.Code Crim.P. art. 905 states:
Following a verdict of guilty in a capital case, a sentence of death may be imposed only after a sentencing hearing as provided herein.
Article 905.2, the interpretation of which is determinative of the issue before us, provides:
The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender. The hearing shall be conducted according to the rules of evidence. Evidence *719 relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for purposes of impeachment.
The first sentence of art. 905.2 puts at issue the defendant's character and his propensities. It is the law which initiates the inquiry into the facts relating to the character of the defendant. With the defendant's character at issue, along with whatever else is germane to the determination of sentence, this article then mandates that the (sentencing) hearing shall be conducted according to the rules of evidence. Because of the gravity of this sentencing hearing, as distinguished from a penalty-determining process in a lesser offense conviction initiated and conducted by a judge as the sentences the safeguard is statutorily provided that this entire hearing shall be conducted according to the rules of evidence. These rules include the general rules on relevancy, documentary evidence, competency of witnesses, character evidence, impeaching and corroborative evidence.[1]
Legitimate inquiry must include the character and propensities of the convicted defendant. No reported case questions the validity of the judge-sentencer's inquisitiveness of an offender's character. The character of the convicted offender is very much bound up in the process of determining sentence. See La.Code Crim.P. art. 894.1. Because of the uniqueness of the process by which the jury determines punishment, the legislature saw fit to premise the procedure on the statement that the focus shall be on the circumstances of the offense and the character and propensities of the offender. For very good reasons, the defendant-offender would gainsay the jury the right to focus on his character. With a procedure which denies to the sentencer, be it judge or jury, a full disclosure and assessment of the character of the offender, a finding short of substantial justice could well be the result.
While the character of the defendant is put at issue by art. 905.2, in presenting evidence on any mitigating circumstances by the defendant, the law of character evidence may conceivably be apropos vis-a-vis the defendant's witnesses, or even his own character if he should testify in his own behalf. The character per se of the defendant is not at issue in the guilt determining phase of the capital case (nor in any other criminal trial) as a factor to be considered as proof of guilt but only as it affects his credibility as a witness if he assumes the status of a witness in his own defense.
If the law were otherwise, there would not be a sure way for the sentencing jury to fulfill the mandates of this article of the code in the event the defendant elected not to testify or offer any witness who put his (the offender's) character at issue as to the mitigating circumstances or through other testimony. Not all of the mitigating circumstances are such that put at issue the defendant's character.[2] To construe art. *720 905.2 in the manner urged by the defendant would be tantamount to holding that the convicted offender shall have the right to determine whether his character should be considered. Such a holding would fly right in the teeth of the clear and unequivocal first sentence which states: "The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender." (Emphasis added.)
It is axiomatic that the conviction per se puts the convicted offender's character at issue. Article 905.2 underpins that precept. To say that in such hearing the character of the defendant cannot be further developed unless he, the offender, first puts it at issue is to read out of the statute its plain unambiguous language and to ignore the basic purpose of the sentencing hearing, i.e., a sentence tailored to the offense committed in keeping with the verdict, the character and the propensities of the offender.
The third sentence of art. 905.2 states: "Evidence relative to aggravating and mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue." This provision has no restraining effect on the issue of evidence of the offender's character, and it complements the first sentence of the article. To hold otherwise would effectively hamstring the efficacy of the capital sentencing procedure.
From the relator's (Jordan) application for writs, it appears that the trial judge ruled the state could anticipatorily introduce evidence of defendant's prior convictions. We hold that the state may introduce prior convictions in its case-in-chief in the penalty phase of the case. See State v. Sawyer, 422 So.2d 95 (La.1982).
The defendant further argues that the state is prohibited from using prior convictions as evidence of his character for the reason those convictions are not based on proper Boykinized pleas. This issue is settled by our ruling in State v. Mattheson, 407 So.2d 1150 (La.1982), wherein we stated:
Nor do we find any merit in defendant's related argument that the trial judge erred in permitting introduction of the prior convictions without a showing by the state that defendant was represented by counsel or had waived same. In Lewis v. United States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the United States Supreme Court recognized that while uncounseled felony convictions could not be used for certain purposes, the Court stated that it had "never suggested that an uncounseled conviction was invalid for all purposes." In the instant case, the prior convictions were used in the sentencing phase of the trial. The convictions were not being used to enhance punishment; rather, defendant's past criminal history was merely a part of the total picture of his "character and propensities." It did not of itself trigger added penalties. Hence, we do not consider the sentencing hearing to be one of those instances where the state is required to affirmatively show that defendant was represented by counsel or had waived same before a prior conviction may be used to show the character and propensities of the defendant.

DECREE
Accordingly, for the reasons assigned, the rulings of the trial court are maintained and the trial court is to proceed with the sentencing hearing.
CALOGERO, J., concurs in part, dissents in part and assigns reasons.
DENNIS, J., dissents with reasons.
BLANCHE, J., concurs and assigns reasons.
*721 WATSON, J., subscribes to the opinion and assigns additional reasons.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
WATSON, Justice, concurring.
As the United States Supreme Court has recently held, there is a fundamental difference between the guilt/innocence determination at issue in the first phase of a bifurcated trial and the life/death choice at the penalty phase of trial. In sentencing, a jury must have before it all relevant information "regarding the individual characteristics of the defendant and his offense, including the nature and circumstances of the crime and the defendant's character, background, history, mental condition, and physical condition." California v. Ramos, ___ U.S. ___ at ___, 103 S.Ct. 3446 at 3455, 77 L.Ed.2d 1171 at 1184 (1983).
The "record" of the offender is a constitutionally indispensable consideration in inflicting the death penalty. Woodson v. North Carolina, 428 U.S. 280 at 304, 96 S.Ct. 2978 at 2991, 49 L.Ed.2d 944 at 961 (1976). See Zant v. Stephens, ___ U.S. ___, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) and Barclay v. Florida, ___ U.S. ___, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). Nothing is more factually or legally relevant to a defendant's sentence than his criminal record.
I respectfully concur.
LEMMON, Justice, concurring.
The critical issue is whether the introduction of competent evidence of defendant's seven prior felony convictions, during the prosecution's case-in-chief in the penalty phase of a capital case and before the defendant either takes the stand or otherwise puts his character at issue, constitutes a statutory violation of La.C.Cr.P. Art. 905.2.
At the outset, it is important to note that there is absolutely no constitutional prohibition against introduction of competent evidence of prior convictions during the prosecution's case-in-chief in the penalty phase of a bifurcated capital sentence proceeding. Zant v. Stephens, ___ U.S. ___, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Therefore, the decision turns on our determination of whether the statute clearly prohibits such evidence or, if the statute is unclear, whether the Legislature intended the prohibition of such evidence.
As the first sentence of Article 905.2 notes, the focus of the sentencing hearing is on the circumstances of the crime and the character and propensities of the defendant. Since the evidence as to the circumstances of the crime has already been introduced at the guilt phase of the trial, it is obvious that the primary purpose of the hearing in the sentencing phase is the introduction of additional evidence relating to the character and propensities of the defendant, which will enable the jury to determine which murderers should receive the death penalty and which should not. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed. 859 (1976). It is therefore highly doubtful that the Legislature intended for the defendant to control the decision on which evidence of his character and propensities will be introduced at the penalty hearing. Yet this is exactly what the adoption of defendant's argument would permit.
The defendant in this particular case, who has seven prior felony convictions, would be delighted to prevent the introduction of that evidence simply by not taking the stand or otherwise putting his character at issue, thereby leaving the jury to determine the appropriateness of the death penalty under the impression that his prior criminal record is "lily white." If defendant succeeds, the worst offenders will never take the stand and will seldom get the death penalty. An equally distorted result would be that the jurors, whose function is to recommend the sentence based on channeled discretion, are never made aware of the pertinent evidence which should channel their discretion. Surely this was not intended by the Gregg decision or by the Legislature in enacting Article 905.2 after the Gregg decision.
The second sentence of Article 905.2 provides that the sentencing hearing shall be conducted according to the rules of evidence. *722 While this provision could be interpreted narrowly to mean all rules of evidence, it is much more likely that the intent of the provision was to conduct the hearing under the rules of evidence applicable to the determination of sentence, rather than to the determination of guilt. Thus, the rules designed to insure that evidence is competent and reliable, such as the rules of authenticity, competency, and other such rules, are clearly applicable to the capital sentencing hearing. However, the very purpose of the rule of evidence prohibiting character evidence in a normal trial before the defendant puts his character at issue is designed to prevent the jury from determining guilt on the basis of character, rather than on the basis of evidence of the particular crime. In the usual trial, the character of the defendant is usually irrelevant, or only marginally relevant, to the issue of guilt. But in a sentencing hearing, capital or otherwise, the character of the defendant is perhaps the most relevant issue for which evidence (in addition to the evidence introduced at the guilt trial) should be introduced. Furthermore, in a normal trial, the probative value of character evidence is almost always outweighed by its prejudicial effect. But in the sentencing phase of a trial, capital or otherwise, the probative value of character evidence is extremely high, since the character and propensities of the defendant is the principal inquiry, and the unquestionably devastating prejudicial effect does not outweigh such high probative value.
Article 905.2 should not be interpreted to require that a sentencing hearing shall be conducted according to rules of evidence which are not applicable to sentencing hearings. At the very least, Article 905.2 is unclear in this respect, and when a statute is unclear, it should be interpreted according to the legislative intent. It is evident that the Legislature clearly did not intend to permit this defendant to control the question of whether or not evidence of his seven prior felony convictions gets before this jury, whose sole purpose in the sentencing phase is to determine whether the circumstances of this particular crime and whether the character and propensities of this particular defendant warrant recommendation of the death penalty.
CALOGERO, Justice, concurring in part and dissenting in part.
I concur in the majority opinion insofar as it holds that the amendment to La.C. Cr.P. art. 905.4(c) cannot be applied retroactively to crimes committed before its effective date and insofar as it holds that the state may introduce, under La.C.Cr.P. art. 905.2, prior convictions of the defendant in its case-in-chief in the penalty phase of the trial. Not the least of my reasons is that the issue has been settled by a majority of this Court. State v. Sawyer, 422 So.2d 95 (La.1982); State v. Mattheson, 407 So.2d 1150 (La.1982).
However, I dissent from that part of the opinion which holds that the state may use prior convictions that were either uncounseled or unconstitutional under Boykin. The majority relies on State v. Mattheson, supra, in support of its result. In Mattheson, this Court in an opinion from which I dissented, held that uncounseled convictions could be used in the penalty phase of defendant's trial, affirming defendant's conviction and death sentence. Since that decision, the United States Fifth Circuit Court of Appeals has granted a stay of defendant's execution and remanded the case to the district court for a hearing on this very issue. Thus, it seems ill advised, at this point, to rely on our Mattheson decision, which has been called into question in federal court, in advising our state district court on how to conduct an ongoing sentencing hearing. It is of little comfort to have relied on a state case if such reliance interjects a federal constitutional reversible error.
Furthermore, in my view there is strong reason to believe that the federal courts will disagree with our Court on this issue, whether uncounseled convictions can be used in the sentencing phase of a defendant's trial. The Court's reliance in Mattheson, on Lewis v. United States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) was *723 misplaced. Lewis involved a prosecution for possession of a specified firearm by a convicted felon in violation of 18 U.S.C.A. § 1202(a)(1). Although the Court therein permitted the use of uncounseled convictions in such prosecution, it expressly referred to two other cases: United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), "where it was held that such a conviction [invalid under Gideon] could not be considered by a court in sentencing a defendant after a subsequent conviction;" and Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), "where the Court disallowed the use of the conviction to impeach the general credibility of the defendant." In my view, the question of whether uncounseled guilty pleas can be used in the penalty phase of a capital case in determining the appropriate sentence is much more closely related to these latter two cases than it is to the issue in Lewis. Accordingly, I think the use of prior convictions that were uncounseled is prohibited under the United States Constitution. I likewise think the same result would obtain in the case of a prior conviction which would be invalid under Boykin. Therefore, I dissent from that portion of the majority opinion which advises the trial court that such prior convictions can be utilized in the penalty phase of defendant's trial.
In any event when this case is tried in the district court, the trial judge is at liberty, notwithstanding this majority opinion, in my view, to require the state before attempting to introduce defendant's conviction, to show that they were counseled and Boykinized. Such a ruling, designed to avoid reversible error in this death penalty case, would certainly be within the sound discretion of the trial judge.
BLANCHE, Justice (concurring).
In a dissent in State of Louisiana v. Antonio James, 431 So.2d 399, this writer wrote that although C.Cr.P. art. 905.2 directs that the sentencing hearing focus on the "character propensities of the offender" that it also required that the formal hearing on that matter be "conducted according to the rules of evidence". C.Cr.P. art. 905.2. The rules of evidence would not permit the introduction of other crimes committed by the defendant unless he took the witness stand and put his character at issue.
As Justice Watson noted in his concurrence, the jury must have before it the individual characteristics and his offenses, including the nature and circumstances of the crime and the defendant's character, background, history, mental condition and physical condition. California v. Ramos, ___ U.S. ___ at ___, 103 S.Ct. 3446 at 3455, 77 L.Ed.2d 1171 at 1184 (1983). Should the court have followed this writer's dissent in Antonio James, Justice Lemmon's remark in his concurrence, that the defendant would be able to control a decision on which evidence of his character and propensities could be introduced at the penalty hearing would have become fact. As noted in the majority opinion, "it is axiomatic that the conviction per se puts the convicted offender's character at issue".
This writer admits that his error in James, supra resulted from his failure to take into account the real purpose of the hearing.
I respectfully concur.
NOTES
[*] Bailes, J. sitting for Justice Marcus.
[1] In the absence of a codification of the law of evidence, the principal source of statutory evidence law is found in La.R.S. Title 15, Criminal Procedure, Chapter 2.
[2] Article 905.5 provides:

The following shall be considered mitigating circumstances;
(a) The offender has no significant prior history of criminal activity;
(b) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
(c) The offense was committed while the offender was under the influence or under the domination of another person;
(d) The offense was committed under circumstances which the offender reasonably believed to provide moral justification or extenuation for his conduct;
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
(f) The youth of the offender at the time of the offense;
(g) The offender was a principal whose participation was relatively minor;
(h) Any other relevant mitigating circumstance.